UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PRIMO BICERA DOMINGO,**<br>Petitioner,<br>vs.<br>**WILLIAM P. BARR, ET AL.,**<br>Respondents. | CASE NO. 20-cv-06089-YGR<br><br>**ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER**<br>Re: Dkt. Nos. 12, 20 |

Now pending before the Court is petitioner Primo Bicera Domingo's motion for an order temporarily enjoining respondents William Barr, Chad Wolf, Matthew Albence, and David Jennings, as well as the Department of Homeland Security, and their agents, employees, and successors in office, from continuing to detain petitioner at Yuba County Jail until such time as the Court hears and rules on his petition for writ of habeas corpus.

1. Background

Petitioner Primo Bicera is native and citizen of the Philippines who first entered the United States on October 13, 2013 as a lawful permanent resident. On September 18, 2018, Domingo was convicted of assault with a deadly weapon in violation of California Penal Code section 245(a)(1). The government deemed Domingo deportable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for conviction of a crime considered an aggravated felony under section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F). On July 2, 2019, Domingo was transferred to the custody of Immigration and Customs Enforcement ("ICE").

On July 5, 2019, removal proceedings commenced. Domingo eventually admitted to the allegations and conceded the charge of removability set forth in the Notice to Appear. A merits hearing was held on December 4, 2019, where the immigration judge denied Domingo's application for relief from removal and ordered him removed to the Philippines. Domingo filed an

1   appeal with the Board of Immigration Appeals, which was dismissed on April 20, 2020.

2   Thereafter, Domingo filed a petition for review ("PFR") and request for a stay of removal with the

3   Ninth Circuit. The stay was granted, and the PFR remains pending.

4       On July 7, 2020, the immigration court held both a competency hearing pursuant to *Matter*

5   *of M-A-M-*, 25 I&N Dec. 474 (BIA 2011) and a custody hearing pursuant to *Casas-Castrillon v.*

6   *Dep't of Homeland Security*, 535 F.3d 942 (9th Cir. 2008). As to competency, the immigration

7   judge observed "a certain degree of delusion" that "might make it difficult for [Domingo's]

8   attorney to interact with him," and thus, granted the request for certain procedural safeguards

9   under *M-A-M-*. The judge noted, however that Domingo was "not really incompetent," and as

10  such, the safeguards would be limited. The judge went on to find that Domingo posed a danger to

11  the community and a flight risk, and accordingly, ordered him to be held without bond.

12      Domingo currently is being detained at Yuba County Jail pending adjudication of his PFR.

13  Since entering the facility, Domingo has been involved in several altercations with other detainees,

14  which has resulted in him being housed in solitary confinement for the past several months.

15  2.    <u>Jurisdiction</u>

16      As a threshold matter, the Court addresses the issue of jurisdiction. Citing *Rumsfeld v.*

17  *Padilla*, 542 U.S. 426 (2004) and *Lopez-Marroquin v. Barr*, No. 18-72922, 2020 WL 1808002

18  (9th Cir. Apr. 9, 2020), respondents argue that jurisdiction is improper in this district because

19  Domingo is confined at Yuba County Jail, which is in the Eastern District of California, where his

20  immediate custodian is the Sheriff of Yuba County, who also is in the Eastern District of

21  California. Respondents note that in *Padilla*, the Supreme Court held that "[w]henever a [section]

22  2241 habeas petitioner seeks to challenge his present physical custody within the United States, he

23  should name his warden as respondent and file the petition in the district of confinement." 542

24  U.S. at 446-47. In *Lopez-Marroquin*, the Ninth Circuit ordered that a request for release from

25  immigration detention due to concerns over COVID-19 be transferred to the Southern District of

26  California, citing *Padilla* for "the general rule that for core habeas petitions challenging present

27  physical confinement, jurisdiction lies in only one district: the district of confinement." 2020 WL

28  1808002, at *1.

Respondents' argument fails to persuade. Courts in this district repeatedly have held, both before and since *Lopez-Marroquin*, that *Padilla* does not extend to cases such as this one where the immediate custodian lacks any actual authority over the immigrant detainee. In *Doe v. Barr*, No. 20-CV-02263-RMI, 2020 WL 1984266, at *5 (N.D. Cal. Apr. 27, 2020), for example, the court noted that there were at least three reasons why an immigrant detainee's legal custodians, and not the Sheriff of Yuba County, properly were named as custodians, and thus, why the court had jurisdiction over the matter. First, the Yuba County Jail's involvement merely was to provide a service to ICE, which remained in complete control of the petitioner's admission into and release from Yuba County Jail. *Id.* Second, the Sheriff of Yuba County would not be in possession of information necessary to respond to the petition on behalf of federal immigration authorities, nor would he have any legitimate interest in litigating the claims. *Id.* Third, by detaining immigrants in remote jail facilities belonging to various counties, then urging the application of the immediate custodian rule, it appeared the respondents may have been attempting to take advantage of the rule to frustrate the petitioner's access to habeas corpus litigation. *Id.* The *Doe* court also reasoned that because Jennings, the San Francisco Field Office Director for ICE, who also is named in this action, was "both within this district and vested with discretionary authority to release Petitioner, he [was] a proper respondent." *Id.* Numerous other courts have similarly so held. *See, e.g., Ortuno v. Jennings*, No. 20-CV-02064-MMC, 2020 WL 2218965, at *2 (N.D. Cal. May 7, 2020) ("[P]etitioners have named as a respondent David Jennings. . . . [T]he Court finds, as have other judges in this district, he is a proper respondent in [section] 2241 actions filed by detainees at Yuba and Mesa Verde; accordingly, the Court finds the petition is properly filed in this district."); *Montoya Echeverria v. Barr*, No. 20-CV-02917-JSC, 2020 WL 2759731, at *3 (N.D. Cal. May 27, 2020) (same); *Zepeda Rivas v. Jennings*, No. 20-CV-02731-VC, 2020 WL 2059848, at *2 (N.D. Cal. April 29, 2020) (finding Northern District of California "proper forum" for [section] 2241 petition filed by detainees at Yuba and Mesa Verde, where petitioners named Jennings as respondent); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017) ("At least where a readily identifiable federal official exercises more immediate control over a contract facility than the Attorney General or another department head, as is the case here, *Padilla* requires a petitioner

3

1    challenging present physical custody to name that more immediate official. . . . Because [San

2    Francisco Field Office Specialist Elicia] Smith is the proper respondent, this Court has habeas

3    jurisdiction over A.H.'s habeas petition."); *Sales v. Johnson*, 323 F.Supp.3d 1131, 1137-38 (N.D.

4    Cal. 2017) (denying motion to dismiss immigrant detainee's habeas petition for lack of

5    jurisdiction where "at least one of the named Respondents here has the legal power to provide

6    Petitioner with the requested relief").

7        This Court agrees with the reasoning and conclusions reached in the above-cited cases and

8    finds that they apply with equal force here.[1]  Domingo's petition was properly filed in this district

9    against these respondents.  In short, jurisdiction lies.

10   3.    <u>Request for Temporary Restraining Order</u>

11       In his petition, Domingo claims that his continued incarceration is unlawful under section

12   504 of the Rehabilitation Act, 29 U.S.C. § 794, and violates the Due Process Clause.

13   Fundamentally, he bases these claims on two theories: (i) he has been denied adequate medical

14   care and psychiatric treatment while detained at Yuba County Jail; and (ii) given his known

15   medical diagnoses, the conditions of his confinement subject Domingo to heightened risk of

16   contracting COVID-19.[2]

17       In evaluating Domingo's claims in the context of the current dispute, the Court focuses on

18   a critical concession from respondents: they have submitted a declaration stating that "ICE is

19   willing to consent to Petitioner's release from ICE custody directly to San Francisco General's

---

[1] The Court acknowledges that there appears to be a split of authority in other districts regarding the scope of *Padilla* and its application in cases like this one. The Court finds those cases, some of which are cited in respondents' brief, unpersuasive as compared to cases decided in this district, which indicate jurisdiction is proper.

[2] The Court is not persuaded that Domingo is likely to succeed on the merits of his claims related to COVID-19. On May 29, 2020, Domingo filed an individual application for emergency release in *Zepeda-Rivas v. Barr*, Case No. 20-cv-02731-VC, a class action brought by a group of ICE detainees at the Mesa Verde Detention Facility and the Yuba County Jail who contend they are at serious risk of becoming infected with COVID-19 due to conditions of confinement. Judge Chhabria denied Domingo's application on June 2, 2020. Domingo points out that the order denied Domingo's application without prejudice and did not articulate a specific basis for the decision. Brevity alone does not undercut the *Zepeda-Rivas* order, however, particularly where all indications are that Judge Chhabria implemented a reasoned system for managing the large number of individual requests from class members in that case. Absent a material change in circumstances, Domingo is not entitled to a second bite at the apple in this Court.

1  locked down mental health care facility, only if the Court orders San Francisco General to return
2  Petitioner directly to ICE custody upon completion of his treatment." (Dkt. No. 20-2, ¶ 29.) Thus,
3  the parties fundamentally agree on an appropriate course of action in the immediate term. Based
4  on the evidence presented, the Court also agrees that treatment would be beneficial to Domingo
5  and would not pose a danger to the community or the public interest. The only dispute appears to
6  be what should happen "upon completion of [Domingo's] treatment," whenever that may be and
7  whatever Domingo's psychiatric condition at that time. At this juncture, the Court does not have
8  enough information to resolve the issue of Domingo's long-term custody.[3]

Accordingly, Domingo's motion for a temporary restraining order is **GRANTED IN PART**. Pursuant to the joint statement submitted by the parties at the Court's request (Dkt. No. 26), the Court **ORDERS** as follows:

1. Immigration and Customs Enforcement (ICE) will release Petitioner forthwith.
2. Upon the Petitioner's release from ICE custody, William Scott, from Faithful Friends Visitation Program at Yuba County Jail, shall transport Petitioner from Yuba County Jail to the Zuckerberg San Francisco General Hospital - Psychiatric Emergency Services ("SF-PES").
3. Petitioner is to reside at SF-PES, located at 1001 Potrero Ave. San Francisco, CA 94110, or another facility that SF-PES may refer him to, until such time as the Court rules on whether the Petitioner shall be returned to ICE custody.
4. At SF-PES, Petitioner will receive a psychological and psychiatric assessment that will last no more than 48 hours, which will determine his needed treatment and placement.

---

[3] In support of his petition, Domingo has submitted letters from various medical professionals opining on the necessity of the proposed treatment. While informative, these letters do not establish a detailed timeline or plan for Domingo's treatment. For example, one letter opines that Domingo "will need to remain *in residential psychiatric treatment for several months*," and after he is "*stabilized*" at SF-PES, he "will be discharged to a residential treatment program," where he will remain for "*at least 6 months, more likely over a year*." (Dkt. No. 1-2, Ex. E (emphasis supplied).) Another letter states that Domingo "will remain at SF-PES until he is *fully evaluated* and, *if appropriate, medically cleared for a residential treatment placement*." The letter suggests placement at a facility that offers a "*90-day inpatient treatment program* for safety-net patients with severe mental illness." (Dkt. No. 1-2, Ex. F (emphasis supplied).) These letters do not provide the Court with critical information for crafting an appropriate remedy.

5. Immediately upon receipt of said psychological and psychiatric assessment or referral for placement, Petitioner shall provide a full and complete copy to ICE.
6. Petitioner shall provide a status report to the Court as soon as possible, and no later than 72 hours from the completed assessment, detailing the treatment prescribed by SF-PES, including the time frame for said treatment.
7. Any and all medical expenses incurred by the Petitioner after his release from ICE custody shall be the sole responsibility of the Petitioner.

This Order terminates Docket Numbers 12 and 20.

**IT IS SO ORDERED.**

Dated:  September 29, 2020

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**